J-S95020-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARWAN HAWES | |
| Appellant | No. 2101 EDA 2016 |

Appeal from the PCRA Order June 20, 2016
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-00006674-2011

BEFORE:  STABILE, J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                    **FILED APRIL 19, 2017**

Marwan Hawes appeals from the June 20, 2016 order entered in the Montgomery County Court of Common Pleas dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  In lieu of an advocate's brief, Hawes' PCRA counsel has filed a **Turner**/**Finley**[1] "no-merit" letter and a motion to withdraw as counsel.  We affirm the PCRA court's order and grant counsel's motion to withdraw.

This Court, in deciding Hawes' direct appeal, set forth a detailed factual history:

> On April 15, 2011, Cheltenham Police arrive[d] at 403 Salisbury Ave[nue] in Cheltenham Township to respond to a burglary in progress.  Okkyong Rho

_____

[1] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

[(Rho)] arrived home to find a red Jeep Cherokee with tinted windows parked and running outside of her home. Upon approaching her home, the Jeep blew its horn and three African American males fled from the residence and entered the Jeep. Rho stated that she was missing thousands of dollars in currency and women's jewelry. Approximately ten minutes later, police located a red Jeep Cherokee with tinted windows, less than 1 mile from the Rho residence, with its engine and exhaust still warm. In plain view inside the vehicle were a police scanner and a pair of gloves. Rho positively identified [the Jeep as] the vehicle involved in the burglary.

Other burglaries [had] occurred, on April 12 and 13, in Lower Merion and Springfield Townships respectively. Witnesses to each of those burglaries saw a red Jeep Cherokee parked and running outside of the houses. One witness positively identified the Jeep located on April 15 as the one he saw during the April 13 burglary. Based on this information, a search warrant was issued and executed on the Jeep. Police found the following items: 2 police scanners, work gloves, a ski mask, a crowbar, several pieces of jewelry, and documents identifying [Hawes] and Raymond Stevenson[, as well as a vehicle registration card identifying Marcelline Hawes, [Hawes'] mother, as the owner].

* * *

During the alleged burglaries, [Hawes] was on house arrest and under the supervision of Jack Krupczak [(Krupczak)] of the Philadelphia Probation Office. After receiving a flyer police distributed identifying [Hawes] as a burglary suspect, [Krupczak's supervisor] contacted [police detective Andy] Snyder about the probation office assisting law enforcement in speaking with [Hawes]. On April 19, 2011, Krupczak contacted [Hawes] and directed him to come to the probation office. Krupczak testified that this meeting was unscheduled and his only purpose was to direct [Hawes] to the Cheltenham Police Department. [Hawes] testified that he believed if he did not comply with this direction, he would be

arrested for violating his probation. When he arrived at the police station, [Hawes] told Detective Snyder his probation officer directed him to speak with police about the burglaries. [Hawes] filled out paperwork indicating his identifying information, including phone numbers where he could be reached. [Hawes] then submitted to questioning by Detective Snyder, the answers to which [Hawes] signed. He was never given [warnings of his] ***Miranda***[2] rights, told he was free to terminate the meeting, or told he was free to leave the police station.

[2] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

Suppression Court Opinion, 4/4/2012, at 1-2, 4-5 (footnote added).

Thereafter, the police obtained a search warrant for the records attached to the cell phone number that [Hawes] provided. Those records revealed that the phone (1) was not registered to [Hawes], but was under the account of Roscoe Williams, and (2) was used near the scenes of the burglaries at the times of the burglaries.

The Commonwealth filed a complaint and information against [Hawes], charging him with various crimes related to the burglaries. Prior to trial, [Hawes] moved to suppress the evidence found in the Jeep, the evidence obtained from his phone records, and his signed answers to Detective Snyder's questioning. The suppression court granted [Hawes]'s motion as to his signed answers to the questions, but denied it as to the evidence obtained from the Jeep and the biographical information contained in his police statement.

[Hawes] proceeded to a jury trial. Evidence offered against [Hawes] included, *inter alia*, the phone records, and a report analyzing DNA evidence taken from a Red Bull can found in the Jeep, which showed that the individual had XY sex chromosomes and that the chance of the sample being someone unrelated to [Hawes] was one in seven trillion. N.T., 5/9/2012, at 37.

On May 10, 2012, [Hawes] was convicted of the crimes indicated above. [Hawes] was sentenced on September 5, 2012.

*Commonwealth v. Hawes*, No. 2931 EDA 2012, unpublished mem. at 1-4 (Pa.Super. filed Aug. 27, 2013). Hawes appealed, and this Court affirmed his judgment of sentence on August 27, 2013. On September 26, 2013, Hawes filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on March 19, 2014.

On December 10, 2014, Hawes filed a *pro se* PCRA petition, claiming ineffective assistance of trial counsel.[2] On January 2, 2015, the PCRA court appointed counsel. On March 2, 2015, Hawes, through counsel, filed an amended PCRA petition, asserting two[3] ineffectiveness claims and requesting an evidentiary hearing. Am. PCRA Pet., 3/2/15, at 3-6. The PCRA court held a hearing on March 21 and May 10, 2016. On June 20, 2016, the PCRA court dismissed Hawes' amended PCRA petition.

On July 5, 2016, Hawes filed a *pro se* notice of appeal along with a *pro se* Pennsylvania Rule of Appellate Procedure 1925(b) statement. On July 7, 2016, the PCRA court directed Hawes' counsel to file a Rule 1925(b)

_____

[2] Hawes' *pro se* petition contained 22 allegations of ineffective assistance of counsel. PCRA Pet., 12/10/14.

[3] While Hawes' amended PCRA petition listed two main claims of ineffectiveness, Hawes' first claim, which asserted trial counsel ineffectiveness for failing to call Hawes at trial, presented two arguments for trial counsel's ineffectiveness. In his *pro se* response to PCRA counsel's **Turner**/**Finley** letter, Hawes addressed those arguments separately. Accordingly, we will address each argument.

statement. On July 21, 2016, Hawes filed a *pro se* petition for a ***Grazier***[4] hearing to waive counsel and/or appoint new counsel.[5] That same day, PCRA counsel filed a statement of intent to file a ***Turner***/***Finley*** letter pursuant to Rule 1925(c)(4). On October 17, 2016, PCRA counsel filed with this Court a ***Turner***/***Finley*** letter brief and petition to withdraw as counsel.[6] On October 27, 2016, Hawes filed a response with this Court to the petition to withdraw. On February 15, 2017, Hawes filed a response with this Court to counsel's ***Turner***/***Finley*** letter brief.[7]

Before we may address the merits of Hawes' appeal, we must determine whether his PCRA counsel has satisfied the requirements for withdrawal under ***Turner***/***Finley***. Counsel must

> file a "no-merit" letter detailing the nature and extent of his review and list[ing] each issue the petitioner wishes to have examined, explaining why those issues are meritless. The PCRA court, or an appellate court if the no-merit letter is filed before it, then must conduct its own independent

---

[4] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

[5] The PCRA court did not rule on this petition.

[6] In lieu of a brief, on October 19, 2016, the Commonwealth filed a letter agreeing with PCRA counsel "that there is no basis in either law or fact to support [Hawes'] appeal" and "there is no merit to any issue." Cmwlth.'s Ltr., 10/19/16.

[7] Hawes styled this response as an "application for relief." However, the filing is a response to counsel's ***Turner***/***Finley*** letter brief and we shall treat it as such. To the extent that this "application for relief" is a separate motion seeking relief from this Court, it is denied with prejudice.

evaluation of the record and agree with counsel that the petition is without merit.

***Commonwealth v. Rykard***, 55 A.3d 1177, 1184 (Pa.Super. 2012) (internal citation omitted). Counsel also must serve copies of the petition to withdraw and no-merit letter on the petitioner and advise the petitioner that he or she has the right to proceed *pro se* or with privately retained counsel. ***Commonwealth v. Widgins***, 29 A.3d 816, 818 (Pa.Super. 2011).

In his no-merit letter, PCRA counsel states that he reviewed the record. Also in the letter, PCRA counsel identifies the issues that Hawes wishes to raise[8] and explains why the issues are meritless. PCRA counsel also mailed a copy of the petition and no-merit letter to Hawes and informed him that, if he sought to continue the appeal, Hawes could retain private counsel or proceed without counsel. We conclude that PCRA counsel has complied with the dictates of ***Turner***/***Finley***.

PCRA counsel raises two issues in his ***Turner***/***Finley*** letter brief:

    I.   Whether trial counsel was ineffective regarding [Hawes]'s failure to testify at trial?

    II.   Whether trial counsel was ineffective for not calling the following witnesses during trial:

        a.  Merceline Hawes

        b.  Raymond Stevenson

_____

[8] Hawes' *pro se* PCRA petition and his February 15, 2017 response to the ***Turner***/***Finley*** letter listed additional issues. However, Hawes' amended PCRA petition raised two claims of ineffective assistance of counsel, which PCRA counsel addressed in his ***Turner***/***Finley*** letter.

> c. Roscoe Williams
>
> d. Luvon Paulson
>
> e. Daryl Dees

*Turner* Ltr. Br. at 4 (PCRA court answers omitted). PCRA counsel's first issue in the *Turner*/*Finley* letter involves two claims of ineffective assistance of counsel that fall under Hawes' failure to testify at trial: (1) trial counsel failed to advise Hawes on or interfered with his right to testify, and (2) trial counsel failed to colloquy Hawes on the record or ask the trial court to do the same.

In his *pro se* response, Hawes raised the two issues presented by PCRA counsel and asserted that PCRA counsel was incorrect in finding these issues meritless. Hawes also raised two additional issues and similarly claimed that PCRA counsel was incorrect for finding them meritless:

> 2. Whether trial counsel was ineffective for presentation of an inconsistent alibi defense and[/]or not properly prepar[ing] alibi witness[?]
>
> . . .
>
> 5. Whether trial counsel was ineffective for not [ob]jecting to an illegal consecutive sentence violates the sub section of burglary statue [sic] 3502[?]

Hawes' *Turner*/*Finley* response, 2/15/17, at 2.

Our standard of review from the denial of PCRA relief "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa.Super. 2011). We will not disturb the

PCRA court's factual findings "unless there is no support for [those] findings in the certified record." ***Commonwealth v. Melendez–Negron***, 123 A.3d 1087, 1090 (Pa.Super. 2015).

When analyzing ineffectiveness claims, "[w]e begin . . . with the presumption that counsel [was] effective." ***Commonwealth v. Spotz***, 18 A.3d 244, 259-60 (Pa. 2011). "[T]he [petitioner] bears the burden of proving ineffectiveness." ***Commonwealth v. Ligons***, 971 A.2d 1125, 1137 (Pa. 2009). To overcome the presumption of effectiveness, a PCRA petitioner must demonstrate that: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." ***Id.*** "A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs." ***Id.***

In his ***Turner***/***Finley*** letter, counsel first addresses the claim that trial counsel was ineffective for failing to advise Hawes of his right to testify and failing to ensure that Hawes knowingly, intelligently, and voluntarily waived his right to testify. PCRA counsel concludes that the issues are meritless because trial counsel testified that on multiple occasions, he advised Hawes of his right to testify but recommended against testifying because it would open the door to impeachment with a prior burglary conviction, which would have "torpedoed" the entire alibi defense. ***Turner***/***Finley*** Ltr. Br. at 7.

In his *pro se* response, Hawes argues that he hired new counsel[9] to assist at trial because he felt that his trial counsel had not adequately discussed trial strategy with him. Hawes' ***Turner***/***Finley*** response, 2/15/17, at 15-16. Hawes asserts that he did not know he would not testify until the morning of trial and believed that the trial court would colloquy him on his right to testify, "as [the courts] do in his home county [of] Philadelphia." ***Id.*** Hawes claims that he would have, consistent with his preferred alibi defense, testified that he was at work during the burglaries. ***See*** N.T. PCRA, 5/10/16, at 34-35.

> The decision to testify on one's own behalf is ultimately to be made by the accused after full consultation with counsel. In order to support a claim that counsel was ineffective for "failing to call the appellant to the stand," [the appellant] must demonstrate either that (1) counsel interfered with his client's freedom to testify, or (2) counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision by the client not to testify in his own behalf. [***Commonwealth v. Thomas***, 783 A.2d 328,] 334 [Pa.Super. 2001)]. "Counsel is not ineffective where counsel's decision to not call the defendant was reasonable." ***Commonwealth v. Breisch***, 719 A.3d 352, 355 (Pa.Super. 1998).

***Commonwealth v. Todd***, 820 A.2d 707, 711 (Pa.Super. 2003).

The PCRA court found trial counsel's testimony credible in all respects. Trial counsel testified that he had spoken with Hawes on numerous

---

[9] While Hawes hired additional counsel immediately before trial, N.T. PCRA, 5/10/16, at 26-27, it is clear that his claims of trial counsel ineffectiveness relate to his initial trial counsel, who was Hawes' actual advocate both before and during trial.

occasions about his right to testify and counseled Hawes that if he testified in his own defense, the Commonwealth would impeach him with a prior burglary conviction. Hawes testified that he had never discussed the issue with trial counsel, despite admitting that he had met with trial counsel on multiple occasions. The PCRA court found trial counsel credible and Hawes incredible. Under these circumstances, we defer to the credibility determinations of the PCRA court. Further, we agree with the PCRA court's conclusions that trial counsel did not interfere with Hawes' right to testify (because Hawes made a knowing, intelligent, and voluntary waiver of that right), and trial counsel's actions were reasonable because calling Hawes to testify would have immediately opened him to impeachment. *Id.* at 711-12 (finding counsel not ineffective where counsel testified that he had spoken with appellant numerous times about his right to testify and advised against testifying because appellant had four prior convictions that could be used against him).

We also conclude that trial counsel was not ineffective for failing to colloquy Hawes on the record or asking the trail court to do so. There is no requirement that a trial court colloquy a defendant regarding his right to testify.[10] *Id.* at 712. Further, where it is clear counsel discussed the right

---

[10] PCRA counsel based the argument that trial counsel was ineffective for failing to ensure Hawes knowingly, intelligently, and voluntarily waived his right to counsel, in part, on a claim that counsel failed to request a mandatory on-the-record colloquy on that waiver.

to testify with the defendant, counsel is not ineffective. ***See id.*** at 711-12.

Here, the trial court found that Hawes' claim was meritless, "based on the testimony of both trial counsel and [Hawes], and the admission by [Hawes] that his trial counsel met with him ten times prior to trial." PCRA Order, 6/20/16, at 1 n.1. We agree with the trial court's conclusion, which is supported by the record.

Next, Hawes argues that his trial counsel was ineffective for failing to call a number of witnesses during trial.

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the ***Strickland*** [***v. Washington***, 466 U.S. 668 (1984),] test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. To demonstrate *. . .* prejudice, a petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense. A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy.

***Commonwealth v. Sneed***, 45 A.3d 1096, 1108-09 (Pa. 2012). We will address each witness separately.

Hawes first argues that trial counsel was ineffective for failing to call his mother, Merceline Hawes, to testify. At the PCRA hearing, Merceline

testified that she last saw her red Jeep Cherokee on April 11, 2011, after Marwan Hawes parked the car on Alma Street. N.T. PCRA, 3/21/16, at 59-60. She then stated that she stayed at her daughter Baheejah's house during the week. *Id.* at 61-62. When she returned on April 16, 2011, she did not see the vehicle on Alma Street and, after finding out that her friend Raymond Stevenson had been in her home,[11] she searched for Stevenson at locations where he picked up drugs. *Id.* at 66. When she could not find Stevenson, she reported the car stolen. *Id.* at 76. She then stated that Montgomery County law enforcement[12] contacted her about the car through her daughter Lakeshia and that Stevenson came to her to talk about the car a few days later. *Id.* at 64-66. However, on cross-examination, Merceline testified that she knew that Stevenson had leased the car out for drugs before Montgomery County law enforcement contacted her. *Id.* at 77. She also testified that in early 2011, Luvon Paulson took possession of Hawes' cell phone. *Id.* at 67-68.

Trial counsel testified that he decided not to call Merceline as a witness because counsel thought "she would be a terrible witness" and her testimony would be repetitive of testimony given by Hawes' sister, Lakeshia, who

_____

[11] Raymond Stevenson had access to Merceline's home. N.T. PCRA, 5/10/16, at 64.

[12] Neither the Commonwealth nor Merceline specified which Montgomery County law enforcement unit contacted Merceline.

counsel found to be "solid and credible." *Id.* at 26-27, 47. The PCRA court denied relief, concluding that Merceline's testimony "was in part duplicative of another defense witness presented at trial, in part contradictory to that of Raymond Stevenson, and the witness's testimony appeared overall incredible given her bias towards [Hawes] and her use of an alias."[13] PCRA Order, 6/20/16, at 2 n.4.

The PCRA court's conclusion is supported by the record. Trial counsel's decision not to call Merceline was a matter of trial strategy, as counsel concluded that Lakeshia would be a stronger witness. Further, Hawes failed to show that Merceline's testimony would have been beneficial. Merceline's testimony would have been cumulative of Lakeshia's testimony, **see Commonwealth v. Tharp**, 101 A.3d 736, 758 (Pa.Super. 2014) (concluding defendant failed to show prejudice where testimony cumulative of evidence already presented in appellant's defense), and Merceline's testimony at the PCRA hearing was inconsistent as to when Stevenson told her that he had loaned the car in exchange for drugs.

Next, PCRA counsel raises the issue whether trial counsel was ineffective for failing to call Stevenson. Stevenson testified at the PCRA hearing that he had loaned Merceline's car to a person named "J.P." in

---

[13] While cross-examining Hawes on his phone records, the Commonwealth introduced letters and receipts for payments into Hawes' inmate account from a Merceline "Boatwright," bearing the signatures of "Mom" or "Mommy." N.T. PCRA, 5/10/16, at 43-45.

exchange for crack cocaine. N.T. PCRA, 3/21/16, at 93. He stated that J.P. used the car multiple times between April 11, 2011 and April 16, 2011. *Id.* Stevenson also testified that he told Merceline that he had loaned the car out when she approached him and told him that she had reported the car stolen. *Id.* at 93-94. Stevenson further testified that once he knew Montgomery County law enforcement was looking for the vehicle, he did not provide them information because he "was nervous about what was going on." *Id.* at 94. The PCRA court denied relief, concluding that Stevenson's testimony was contradictory to Merceline's testimony, Stevenson had a "significant criminal history," and Stevenson "did not provide any information regarding the third party who allegedly [took the car] to the authorities prior to the time of trial." PCRA Order, 6/20/16, at 2 n.5.

We agree with the PCRA court's conclusions, which are supported by the record. Under these circumstances, we agree with the PCRA court that trial counsel was not ineffective for failing to call Stevenson because Stevenson's testimony "was not necessary to avoid prejudice to [Hawes] and trial counsel demonstrated a reasonable basis for failing to call [him] at trial." *See id.* at 2

PCRA counsel next addresses the claim that trial counsel was ineffective for failing to call Roscoe Williams. Williams testified at the PCRA hearing that in January 2011, he permitted Hawes to use the cell phone later implicated in the burglaries but Hawes returned the phone to Williams in February 2011 because the cell phone plan was too expensive. N.T. PCRA,

3/21/16, at 113. Williams stated he gave the phone to Luvon Poulson, who used the phone between March 2011 and May 2011. *Id.* at 113-14. According to Williams, Poulson returned the phone to Williams, who cancelled the plan. *Id.* at 115. At the end of examination, the Commonwealth introduced a certified record of Williams' robbery conviction. The PCRA court concluded that William's testimony "was not necessary to avoid prejudice to [Hawes] and trial counsel demonstrated a reasonable basis for failing to call [him] at trial" because Williams was "incredible and had a significant criminal history," and his testimony "would have been rebutted by evidence presented by the Commonwealth of the cell phone's location."[14] PCRA Order, 6/20/16, at 2 n.6.

We agree with the trial court's conclusion that this issue is meritless. The Commonwealth would have impeached Williams with a *crimen falsi* robbery conviction if he had testified at trial. *See* Pa.R.Evid. 609(a); *Commonwealth v. Bryant*, 855 A.2d 726, 746 (Pa. 2004). Further, the Commonwealth would have rebutted the testimony with testimony of a cell

---

[14] The PCRA court also found that Williams would have been impeached by a prior statement given to police about the cell phone. *See* PCRA Order, 6/20/16, at 2. We do not find support for the PCRA court's conclusion that had Williams testified at trial, he would have been impeached using a prior inconsistent statement. The notes of testimony do not show that the Commonwealth introduced a prior inconsistent statement at the PCRA hearing. Regardless of whether such a statement was introduced, we conclude that the PCRA court's conclusion that the claim is meritless is correct.

phone expert, who testified at the PCRA hearing that the cell phone was two blocks away from Hawes' residence throughout the early portion of April 2011. N.T. PCRA, 5/10/16, at 114-15.

Next, Hawes' counsel addresses trial counsel's failure to call Luvon Poulson and Darryl Dees. Hawes asserts that Poulson and Dees were critical to his defense because Poulson would have testified that he possessed the cell phone linked to the burglaries and Dees would have testified that when the burglaries occurred, he and Hawes were working for a contractor. The PCRA court found that Hawes waived this argument because he failed to present Paulson and Dees at the PCRA hearing. *See* PCRA Order, 6/20/16, at 2.

We disagree with the PCRA court that Hawes waived this argument because he failed to produce these witnesses at his PCRA hearing. *Cf. Commonwealth v. Lopez*, 739 A.2d 485, 496 (Pa. 1999) (suggesting that affidavits could provide "objective proof" that witnesses trial counsel failed to call "actually exist, or that they were ready, willing and able to testify on his behalf at his trial"). However, we conclude that the issue is meritless. Hawes presented the affidavits of both Poulson and Dees, but these one-page documents do not confirm that Poulson or Dees would have been available to testify at Hawes' trial.[15] Further, it is not clear that Poulson's or

---

[15] Poulson and Dees' failure to appear for the PCRA hearing further suggests their unavailability.

Dees' testimony would have been beneficial to Hawes. Poulson's proposed testimony was that he possessed the cell phone from March 2011 to May 2011. However, the Commonwealth's cell phone expert, who placed the cell phone within two blocks of Hawes' residence throughout the early portion of April 2011, would have rebutted Poulson's proposed testimony.[16] *See*, N.T. PCRA, 5/10/16, at 84-87. Dees' proposed testimony, that he and Hawes were at work, would have been cumulative and repetitive of Molina's testimony that Hawes was working on a job site throughout the week of the burglaries. *See* N.T. Trial, 5/9/12, at 195, 211. Because Hawes failed to prove that these witnesses would have been available to testify or that their testimony would have been beneficial, we conclude that trial counsel was not ineffective for failing to call these witnesses.

In his *pro se* response, Hawes raised two additional issues that he believes are meritorious, but argues that "PCRA counsel err[]ed in determining that these claims lacked merit and that they did not require[] the [P]CRA [c]ourt to apply any governing law to the facts." Hawes' ***Turner***/***Finley*** response, 2/15/17, at 2. These issues are waived on appeal because Hawes did not include them in his amended PCRA petition. *See*

_____

[16] According to Pennsylvania Department of Transportation records, Poulson resided at 2919 West Arizona St. in Philadelphia. N.T., 5/10/16, at 96-97. Hawes lived at 5605 Warrington Avenue in Philadelphia. *Id.* at 89. The Commonwealth's cell phone expert testified that these addresses are approximately five miles apart. *Id.* at 93.

*Commonwealth v. Spotz*, 18 A.3d 244, 320 (Pa. 2011). Additionally, even if we concluded that Hawes preserved these issues for appeal, we would find that he is not entitled to relief because the issues are meritless.

Hawes first argues that trial counsel was ineffective for failing to prepare a consistent alibi defense and failing to prepare alibi witness Robert Molina for trial. Hawes' *Turner*/*Finley* response, 2/15/17, at 12. Hawes contends that trial counsel did not bring Molina to the court's attention until the morning of trial, when trial counsel asserted "difficulty . . . locating [Molina]." *Id.* Further, Hawes asserts that trial counsel did not familiarize himself with Molina, as evinced by referring to the witness as "Bobby Merl[i]no" and the fact that while trial counsel indicated in his opening that Molina would testify that Hawes worked the entire month of April, Molina testified on cross-examination that Hawes did not come to work after April 2011. *Id.* at 10-12.

This issue is meritless. Molina testified on cross-examination that he learned Hawes had been arrested in April 2011, when Hawes did not come into work. N.T. Trial, 5/9/12, at 208. However, Molina did not say **when** in April 2011 Hawes failed to come into work. Further, after Molina testified that he heard this information from Sean Squire, trial counsel objected to the testimony as hearsay. *Id.* at 209. Trial counsel attempted to rehabilitate Molina by asking him if "there [was] any doubt in [his] mind that [Hawes] was at the job site the entirety of those days, from April 11th to April 15th," to which Molina responded "no." *Id.* at 211. Further, before the

first day of trial, trial counsel informed the trial court that he had attempted to find the "Bobby Merlino" referenced in the grand jury testimony and had asked Hawes about "Bobby." N.T. Trial, 5/8/12, at 6-8. Once trial counsel determined who Molina was, he sent an investigator to talk to Molina, *id.* at 8, and spoke to Molina personally at least a few days before trial, N.T. Trial, 5/9/12, at 207.[17] Trial counsel also subpoenaed Molina to testify and discussed details with Molina before trial. N.T. Trial, 5/9/12, at 196-97. Apart from references to counsel's pretrial discussion with the Commonwealth and trial court about Molina's alibi testimony, Hawes presents no evidence that trial counsel failed to prepare Molina. Contrary to Hawes' assertions, it is clear that trial counsel attempted to prepare Molina in the short amount of time he had to do so.

Next, Hawes argues that his conviction for possessing an instrument of crime ("PIC") should have merged, for sentencing purposes, with his conviction for burglary. Hawes' *Turner*/*Finley* response, 2/15/17, at 17-18. First, Hawes claims that his sentence on the PIC conviction violates 18 Pa.C.S. § 3502(d), which prohibits sentencing on both the "burglary and . . . the offense which it was his intent to commit after the burglarious entry or for an attempt to commit that offense, unless the additional offense

_____

[17] On cross-examination, Molina confirmed that he had spoken to trial counsel "last Friday." N.T. Trial, 5/9/12, at 207. Molina testified on Wednesday, May 9, 2012.

constitutes a felony of the first or second degree." Alternatively, Hawes argues that his convictions merge under section 9765 of the Sentencing Code.[18]

Section 3502 of the Crimes Code defines burglary:

> **(a) Offense defined.--**A person commits the offense of burglary if, with the intent to commit a crime therein, the person:
>
> > (2) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present;

18 Pa.C.S. § 3502. Section 907(a) of the Crimes Code defines the crime of PIC:

> **(a) Criminal instruments generally.**--A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

18 Pa.C.S. § 907(a).

---

[18] Section 9765 provides that:

> [n]o crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765.

Both arguments are meritless. The record shows that Hawes intended to commit theft by unlawful taking,[19] not PIC, after breaking into the homes. With respect to Hawes' section 9765 argument, burglary contains at least one element that is not contained within PIC — entering a building or occupied structure — and PIC contains at least one element that is not contained within burglary — possessing an instrument of crime. Therefore, these crimes do not merge for sentencing purposes.

Order affirmed. Motion to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/19/2017

---

[19] 18 Pa.C.S. § 3921(a).

- 21 -